UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

     Plaintiff,

v.                        Case No. 04-80857

Contrell Smith,            Sean F. Cox
                               United States District Court Judge

     Defendant.

_____/

## OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE
## (ECF No. 457)

Defendant Contrell Smith has served fourteen years of his twenty-seven-year sentence for leading a crack and powder cocaine trafficking organization. Acting through counsel, he has filed a motion for compassionate release, arguing that the ongoing novel coronavirus pandemic ("COVID-19"), coupled with his health issues, presents "extraordinary and compelling reasons" for a sentence reduction. The Government opposes Smith's motion.

For the reasons below, the Court will deny Smith's motion for compassionate release.

## BACKGROUND

In 2006, a jury convicted Defendant Contrell Smith on nine counts: (1) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 ("Count 2");[1] (2) possession with

---

[1] The jury also convicted Smith of conspiracy to distribute and possess with intent to distribute cocaine or a cocaine base. ("Count 1") (ECF No. 172, PageID 611). The jury found that 5 kilograms or more of cocaine and 50 grams or more of crack cocaine were involved in this offense. (ECF No. 172, PageID 612). However, because conspiracy to distribute a controlled substance is a lesser-included offense of Smith's continuing criminal enterprise conviction, Smith's conviction on Count 1 was vacated after the verdict. *See, generally, Rutledge v. United States*, 517 U.S. 292 (1996).

1

intent to distribute a controlled substance (176.2 grams of cocaine base), in violation of 21 U.S.C. § 841(a)(1) ("Count 4"); (3)  possession with intent to distribute a controlled substance (13.1 grams of cocaine), in violation of 21 U.S.C. 841(a)(1) ("Count 5"); (4) possession with intent to distribute a controlled substance (59.8 grams of a cocaine base), in violation of 21 U.S.C. 841(a)(1) ("Count 6"); (5) possession with intent to distribute a controlled substance (99.9 grams of cocaine), in violation of 21 U.S.C. 841(a)(1) ("Count 7"); and (6) four counts of unlawful use of a communication facility, in violation of 21 U.S.C. 843(b) ("Counts 27, 30, 31, and 32"). (ECF No. 191). For both Counts 4 and 6, the jury found that Smith possessed 50 grams or more of crack cocaine. (ECF No. 172, PageID 613-614). Under the penalties for crack cocaine offenses in effect at the time of sentencing, Smith faced a mandatory-minimum sentence of 10 years' imprisonment for his crack cocaine possession-with-intent convictions.

At sentencing, Smith's Guidelines Range called for life imprisonment, but the Honorable Lawrence P. Zatkoff varied downward in imposing his sentence. On Counts 2, 4, and 6, Judge Zatkoff sentenced Smith to 360 months' imprisonment. On Counts 5 and 7, Smith was sentenced to 240 months' imprisonment. And on Counts 27, 30, 31, and 32, Smith was sentenced to 48 months' imprisonment. All sentences ran concurrent to each other. (ECF No. 191, PageID 736). Smith began serving his sentence on July 31, 2006. (ECF No. 204, PageID 913).

Smith appealed his convictions. (ECF No. 192). On August 9, 2007, the United States Court of Appeals for the Sixth Circuit affirmed Smith's convictions. (ECF No. 254). On December 20, 2007, the United States Supreme Court denied Smith's petition for a writ of certiorari. (ECF No. 285).

After Smith's conviction became final, he filed a motion to vacate his sentence under 28 U.S.C. § 2255. (ECF Nos. 343 and 351). Judge Zatkoff referred that motion to Magistrate Judge Donald Scheer, who issued a Report and Recommendation, advising that the motion be denied. (ECF No. 373). Judge Zatkoff adopted this Report and Recommendation, over Smith's objection, and denied the § 2255 motion. (ECF No. 376). Smith attempted to appeal this ruling, but both Judge Zatkoff and the Sixth Circuit declined to grant a certificate of appealability. (ECF Nos. 382 and 385).

In 2015, this case was reassigned to the undersigned. On January 2, 2018, the Government stipulated that Smith was eligible for a sentence reduction to 324 months because of post-sentence amendments to the Sentencing Guidelines. (ECF No. 431). On June 1, 2018, the Court reduced Smith's sentence on Counts 2, 4, and 6 from 360 months' imprisonment to 324 months' imprisonment. (ECF No. 434). His sentence on the remaining counts remained as originally imposed.

On March 2, 2019, Smith filed a motion to further reduce his sentence based on the First Step Act. (ECF No. 435). The Government opposed this motion. (ECF No. 443). On April 29, 2020, the Court held a telephonic hearing on this motion and took it under advisement.

While Smith's First Step motion was under advisement, Smith filed his now-pending motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 457). Smith argues that he should be released because the 18 U.S.C. § 3553 factors support a sentence of time served and his health conditions—specifically, hypertension and sickle cell trait—present "extraordinary and compelling reasons" for a sentence reduction because they could cause him to have severe, life-threatening symptoms if he contracts COVID-19.

3

On June 5, 2020, the Government filed a response opposing Smith's compassionate-release motion. (ECF No. 462). The Government argues that Smith's health conditions do not qualify as "extraordinary and compelling reasons," and that the § 3553 factors do not support release.

On June 24, 2020, Smith filed a reply wherein he provides medical records that indicate that his "sickle cell trait disorder is consistent with thalassemia, a hemoglobin disorder in which not enough red blood cells are produced." (ECF No. 469, PageID 2988). Both Smith and the Government have also filed multiple supplemental briefs on this motion. (ECF Nos. 469, 473, 478, 479, and 485). In one of these supplements, Smith identified obesity as another medical condition that increases his risk of severe COVID-19 symptoms. (ECF No. 473).

On July 7, 2020, the Court issued its Opinion and Order on Smith's First Step motion, concluding that the First Step Act did not allow Smith's sentence for his continuing-criminal-enterprise conviction to be reduced. (ECF No. 475). However, the Court indicated that it would reduce Smith's sentence on his crack cocaine possession-with-intent convictions. The Court deferred ordering proceedings consistent with the Opinion and Order until after Smith's motion for compassionate release had been resolved. Thus, while Smith's sentences on these possession-with-intent charges are in limbo, his 324-month sentence on his continuing-criminal-enterprise conviction stands. The Bureau of Prison's website indicates that Smith is expected to be released on March 13, 2029.

## ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a)

and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement" with which the Court must comply when considering Smith's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances under this fourth category. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

"In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines." *United States v. Shah*, 2020 WL 1934930 at *1 (E.D. Mich. April 22, 2020) (citations omitted).

I.      **Extraordinary and Compelling Reasons/ U.S.S.G. § 1B1.13**

The First Step Act effectively transferred the power to determine whether "extraordinary and compelling reasons" exist from the BOP to the federal courts. *See, generally, United States v. Young*, 2020 WL 1047815 at *3-6 (M.D. Tenn. March 4, 2020) (describing changes in the statutory and regulatory standards that governed compassionate release motions from 1984 to the present). Before the First Step Act, the BOP made that call by applying a standard articulated by the United States Sentencing Commission in an Application Note to U.S.S.G. § 1B1.13. *Id*.    Today, that finding is not predicated on either that Application Note or the BOP's judgment because the First Step Act gave the judiciary "the authority to reduce a prisoner's sentence upon the [C]ourt's independent finding of extraordinary or compelling reasons." *Id*. at *6 (collecting cases). To make this finding, the Court may still look to § 1B1.13's Application Note for guidance in applying this "vague standard." *United States v. Ebbers*, -- F.Supp.3d --, 2020 WL 91399 at *2 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019).[2]

To begin, § 1B1.13's Application Note provides certain circumstances in which a prisoner's medical condition constitutes an extraordinary and compelling reason for a sentence reduction:

1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

[2] Whether the Application Note to § 1B1.13 restricts the Court's analysis of "extraordinary and compelling reasons" or is merely guidance is not dispositive of this motion, or likely of any other similar motion. Even if § 1B1.13 it is only guidance, the defendant's release must still be consistent with that section under 18 U.S.C. § 3582(c)(1)(A) (requiring a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission.")

6

**(A) Medical Condition of the Defendant.**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. (n.1) (2018).

Smith cites three medical conditions that he believes amount to extraordinary and compelling reasons for release: his hypertension, obesity, and sickle cell trait. He has provided medical records to substantiate these conditions.

The Centers for Disease Control and Prevention ("CDC") has recognized that people with obesity "are at increased risk for severe illness from COVID-19" and that people with hypertension "might be at an increased risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 24, 2020).

Smith's third medical condition, and its vulnerability to COVID-19, requires a bit more explanation. To begin, sickle cell *trait* is not sickle cell *disease*. This distinction matters because,

while the CDC recognizes that people with sickle cell disease "are at increased risk of severe illness from COVID-19," it does not recognize any increased risk for people with sickle cell trait. *Id.* Sickle cell trait occurs when a person inherits one sickle cell gene and one normal gene. *Sickle Cell Disease (SCD): What is Sickle Cell Trait?*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ncbddd/sicklecell/traits.html (last accessed July 22, 2020). "Most people with [sickle cell trait] do not have any symptoms of [sickle cell disease], although— in rare cases—people with [sickle cell trait] might experience complications of [sickle cell disease.]" *Id.* "Approximately 3 million people living in the United States have [sickle cell trait]," and it "affects 1 in 12 Blacks or African Americans in the United States." *What You Should Know About Sickle Cell Trait*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ncbddd/sicklecell/ documents/scd%20factsheet_sickle% 20cell%20trait.pdf (last accessed July 22, 2020).

However, Smith's sickle cell condition presents an additional twist: his medical records indicate that his sickle cell trait is "consistent with beta-Thalassemia minor." (ECF No. 472-2, PageID 3044). According to the Mayo Clinic, thalassemia "is an inherited blood disorder that causes your body to have less hemoglobin than normal." *Thalassemia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/thalassemia/symptoms-causes/syc-20354995 (last accessed July 24, 2020). A lack of hemoglobin caused by thalassemia inhibits red blood cells from carrying oxygen and can cause fatigue, weakness, pale or yellowish skins, facial bone deformities, slow growth, abdominal swelling, and dark urine. *Id.*

"Hemoglobin molecules are made of chains called alpha and beta chains that can be affected by mutations. In thalassemia, the production of either the alpha or beta chains are reduced,

8

resulting in either alpha-thalassemia or beta-thalassemia." *Id*. "In beta-thalassemia, the severity of thalassemia…depends on which part of the hemoglobin molecule is affected." *Id*. If only one gene involved in making up the beta-hemoglobin chain is mutated, the person has "minor or beta-thalassemia" and will experience "mild signs and symptoms." *Id*. The CDC recognizes that people with thalassemia "*might* be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last accessed July 22, 2020) (emphasis added).

Thus, Smith's medical records indicate that he has one condition (obesity) that increases his risk of severe COVID-19 illness, one condition (hypertension) that *might* increase his chance of severe COVID-19 illness, and another condition (sickle cell trait) that is not thought to increase his risk but that "is consistent with" a mild form of a condition (thalassemia) that also *might* increase his chance of severe illness. Notably, the link between two of these conditions and severe COVID-19 symptoms is speculative. And there is no indication that any of Smith's conditions can be reasonably understood to be a "serious physical or medical condition." Smith's Body Mass Index is 32, not much above the CDC's threshold of 30, and he is being treated for his hypertension. Although he has had to switch medications several times in the past two years, there is no indication that his current treatment for hypertension is not effectively managing this condition. And, besides one incident of "painful passing of blood clots in his urine," Smith does not allege that his sickle cell trait/thalassemia beta-minor manifests itself through any symptoms.

Even considering these conditions together, the Court cannot conclude that they "substantially diminish[] the ability of [Smith] to provide self-care within the environment of a correctional facility," or that they are conditions from which he "is not expected to recover."

9

Beyond the guidance provided by the Application Note, the current circumstances do not provide extraordinary and compelling reasons to reduce Smith's sentence. A court in this district has defined "extraordinary" as "exceptional to a very marked extent," and "compelling" as "tending to convince or convert by or as if by forcefulness of evidence." *Shah*, 2020 WL 1934930 at *2 (E.D. Mich. April 22, 2020) (quoting Webster's Third International Dictionary, Unabridged (2020)). Another court in this district has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *United States v. Sapp*, 2020 WL 515935 at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

Smith's fear of COVID-19 at FCI Elkton is understandable, but speculative. To some degree, Smith "has an elevated risk of developing the more severe symptoms of COVID-19, but that generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release. . . ." *United States v. Peaks*, 2020 WL 2214231 at *2 (E.D. Mich. May 7, 2020); *see also Shah*, 2020 WL 1934930 at *2 ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release.") Considering the similarly speculative nature of the effect that a COVID-19 infection might have on Smith given his medical conditions, the risk at this time is simply too unsubstantiated to be considered "extraordinary and compelling."

10

Thus, the Court concludes that Smith has not shown that there are extraordinary and compelling reasons to justify his release or that his release would be consistent with the applicable policy statements issued by the Sentencing Commission.

## II.        § 3553(a) Factors

Moreover, the Court concludes that the § 3553(a) sentencing factors do not favor immediate release.  At sentencing, Smith's Guidelines Range was life imprisonment. Judge Zatkoff imposed a below-Guidelines sentence of 360 months. Smith is currently serving a 324-month sentence. According to a memo from the Probation Department, if he was sentenced today, Smith's Guidelines Range would be 292 to 365 months. Smith contends that his Guidelines Range would really be 235 to 292 months. (ECF No. 457, PageID 2857). Moreover, Smith's sentence on his continuing-criminal-enterprise conviction (which remains in effect following the Court's decision on Smith's First Step motion) carries a mandatory-minimum sentence of 240 months (20 years). As of now, Smith has served roughly 168 months and is expected to be released on March 13, 2029.

Smith's crime was serious. He was the kingpin of a large, sophisticated drug distribution organization that dealt crack and powder cocaine in significant quantities. Although a portion of Smith's sentence is in limbo, Congress contemplated that someone who, like Smith, engaged in a continuing criminal enterprise would spend—at a minimum—20 years in prison. Smith has served about 14 years. While this is a substantial amount of time in prison, the Court concludes that immediate release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from further crimes of the defendant.

11

**CONCLUSION**

For these reasons, the Court **DENIES** Smith's Motion for Compassionate Release. (ECF

No. 457).

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 25, 2020